73 F.3d 648
 151 L.R.R.M. (BNA) 2258, 64 USLW 2458,
19 Employee Benefits Cas. 2457
 Joseph GOLDEN, Angelo Deitos, Edward Jones, Ida Thomason,
Luther Palmer, Caroline Forys, Josephine Thomas, John Hoyle,
Arthur Sallis, Thelma Songer, John W. Galloway and Roger
Farrar, Plaintiffs-Appellees,
v.
KELSEY-HAYES COMPANY,
Defendant-Appellant
(94-1463).
In re Joseph GOLDEN, Angelo Deitos, Edward Jones, Ida
Thomason, Luther Palmer, Caroline Forys, Josephine Thomas,
John Hoyle, Arthur Sallis, Thelma Songer, John W. Galloway
and Roger Farrar, on behalf of themselves and a class of
persons similarly situated, Petitioners (95-1474).
 Nos. 94-1463, 95-1474.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 19, 1995.
Decided Jan. 18, 1996.
 
 Roger J. McClow (argued and briefed), Klimist, McKnight, Sale, McClow & Canzano, Southfield, MI, for plaintiffs-appellees.
 Mark T. Nelson, Butzel, Long, Gust, Klein & Van Zile, Detroit, MI, Kirk D. Messmer (argued and briefed), Jay G. Swardenski (briefed), Christopher A. Johlie, Elliot H. Goldman, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for defendant-appellant.
 Before: BROWN, BOGGS, and NORRIS, Circuit Judges.
 BROWN, J., delivered the opinion of the court, in which NORRIS, J., joined. BOGGS, J. (pp. 663-666), delivered a separate opinion concurring in part and dissenting in part.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 This opinion resolves an appeal of a district court's grant of a preliminary injunction and resolves a petition to this court for a writ of mandamus. Both matters arise from the same underlying lawsuit regarding whether the plaintiffs are entitled to continuing health insurance benefits. First, as indicated, the defendants appeal the district court's grant of a preliminary injunction. Second, the plaintiffs petition this court for a writ of mandamus ordering the district court to allow them a jury trial. After summarizing the relevant facts giving rise to the district court litigation, we will address each issue in turn.
 
 I. FACTS
 
 2
 The plaintiffs are retired employees of, and surviving spouses of retired employees of, Kelsey-Hayes Company and Hayes Wheels International, which manufacture automobile brakes and wheels. During the plaintiffs' or plaintiffs' spouses' employment, the United Automobile Workers (UAW) and five of its local unions represented them in collective bargaining with their employer. The five bargaining units originally served employees at seven different Kelsey-Hayes plants. Since the 1960s, as required by collective bargaining agreements (CBAs) in effect at each plant, Kelsey-Hayes has provided health insurance benefits to employees, to retirees, and to the surviving spouses of deceased retirees.
 
 
 3
 In 1987, Kelsey-Hayes sold three of its plants. At that time, the employees in those plants terminated their employment with Kelsey-Hayes. Kelsey-Hayes, however, continues to provide health insurance benefits to employees who retired from those plants before the sales, and to their spouses, and to the surviving spouses of deceased retirees.
 
 
 4
 In December of 1992, Kelsey-Hayes split into two companies: Kelsey-Hayes Co., which continued the brake business, and Hayes Wheels International, which continued the wheel business.[1] When the company split, the new Kelsey-Hayes (see footnote 1) took three plants, and Hayes Wheels took one plant. Kelsey-Hayes continues the sponsorship of health insurance benefit plans for pre-split retirees, including those who are retired from the three plants sold in 1987, while each company sponsors the plans for its own post-split retirees.
 
 
 5
 On April 26, 1993, each company announced that it would modify the health insurance benefits provided to retirees and surviving spouses, effective January 1, 1994. The companies described the changes in a summary plan description[2] (SPD) sent to all retirees in November of 1993. The modifications included the imposition of a monthly premium contribution, increased co-payment and annual deductible requirements, a lifetime benefit cap of $500,000 per beneficiary, and the elimination of the Special Age 65 Benefit.[3] Generally, the companies were to deduct the costs of these modifications from the pensioners' monthly checks. These changes affected at least some retirees from five different plants, and their spouses. The modifications went into effect as planned on January 1, 1994.
 
 
 6
 Meanwhile, the plaintiffs filed this action as a class action on November 12, 1993.[4] The plaintiffs raise one claim, for breach of collective bargaining agreements, that is relevant to the issues presented here. They seek declaratory, injunctive, and monetary relief, and costs and attorney fees. In their complaint, the plaintiffs included a demand for a jury trial.
 
 
 7
 On December 23, 1993, the plaintiffs filed a motion for a preliminary injunction. The district court scheduled a hearing on the motion for March 10, 1994. Prior to the hearing, one of the UAW locals negotiated new CBAs for two of the plants at issue, one owned by Kelsey-Hayes, the other by Hayes Wheels. During these negotiations, both Kelsey-Hayes and Hayes Wheels entered into separate letter agreements with the local union rescinding virtually all the changes to the retiree health plans for those two plants, retroactive to January 1, 1994, and subject to the outcome of this litigation. As a result, the plaintiffs withdrew their request for a preliminary injunction as to retirees from those two plants.
 
 
 8
 On March 14, 1994, the district court entered a preliminary injunction directing Kelsey-Hayes to reinstate health insurance benefits to pre-1994 levels for retirees of the three remaining plants affected by the injunction.[5] The injunction took effect on April 18, 1994, when the plaintiffs posted an injunction bond. On April 29, 1994, Kelsey-Hayes filed a notice of its intent to appeal the preliminary injunction.
 
 
 9
 On December 20, 1994, the plaintiffs filed an amended complaint in which they added Hayes Wheels as a defendant. The amended complaint, like the original complaint, included a demand for a jury trial. On February 28, 1995, the district court struck the plaintiffs' jury demand on the recommendation of a magistrate judge, after briefs and argument.
 
 
 10
 On May 4, 1995, the plaintiffs filed in this court a petition seeking a writ of mandamus directing the district court to reinstate their jury demand.
 
 II. THE PRELIMINARY INJUNCTION
 
 11
 The plaintiffs brought this action for reinstatement of retiree health insurance benefits under section 301(a) of the Labor--Management Relations Act (LMRA), 29 U.S.C. Sec. 185 (1988).[6] The district court granted the plaintiffs' motion for a preliminary injunction ordering the defendant to resume providing complete health insurance benefits to the plaintiffs at no cost to them. Golden v. Kelsey-Hayes Co., 845 F.Supp. 410, 417 (E.D.Mich.1994). The defendant, Kelsey-Hayes Co., filed this interlocutory appeal, presenting the following issues: (1) Did CBAs between the plaintiffs' union and the defendant provide the plaintiffs a vested right to receive lifetime health insurance benefits without cost; and (2) did the district court abuse its discretion in granting class-wide relief before certifying the class? For the reasons set forth below, we AFFIRM the district court's order granting the preliminary injunction.
 
 ANALYSIS
 
 12
 Did CBAs between the plaintiffs' union and the defendants provide the plaintiffs a vested right to receive lifetime health insurance benefits without cost?
 
 Standard of Review
 
 13
 An appellate court reviews a district court's grant of a preliminary injunction for an abuse of discretion. CSX Transp. v. Tennessee Bd. of Equalization, 964 F.2d 548, 554 (6th Cir.1992). We will hold that the district court erred only if it incorrectly applied the law, or relied on clearly erroneous findings of fact. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985). We therefore review the district court's conclusions of law de novo and its findings of fact for clear error. Performance Unlimited v. Questar Publishers Inc., 52 F.3d 1373, 1381 (6th Cir.1995). Questions of contract interpretation are generally considered questions of law subject to de novo review. Boyer v. Douglas Components Corp., 986 F.2d 999, 1003 (6th Cir.1993).
 
 
 14
 Standard for Issuing a Preliminary Injunction
 
 
 15
 When presented with a motion for a preliminary injunction, a district court considers four factors: (1) the plaintiffs' likelihood of success on the merits, (2) whether the plaintiffs could suffer irreparable harm without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of the injunction on the public interest. Performance Unlimited, 52 F.3d 1373 at 1381. None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them. Id. (citing In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985)).
 
 
 16
 The district court did not abuse its discretion in this case.
 
 
 17
 The district court considered each of the four factors listed above and granted the preliminary injunction. On appeal, the defendant challenges (1) the court's determination that the plaintiffs are likely to succeed on the merits, (2) its determination that the plaintiffs are likely to suffer irreparable harm without the injunction, and (3) its balancing of the harms. We will consider the district court's decisions on these factors in turn.
 
 
 18
 1. The plaintiffs' likelihood of success on the merits
 
 
 19
 The plaintiffs are likely to succeed on the merits of this case if they can prove they have a "vested" right to the comprehensive health insurance benefits they received prior to January 1, 1994. To prove this, the plaintiffs must show that the defendant and the union intended to include a right to lifetime benefits when they negotiated the CBAs at issue here. There is no statutory right to lifetime health benefits.[7] If such a right exists, it exists because the parties agreed "to vest a welfare benefit plan." Boyer, 986 F.2d 999 at 1005.
 
 The Yard-Man precedent
 
 20
 Relying on our decision in International Union, United Automobile Workers v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), the district court found that the "plaintiffs have demonstrated a strong likelihood of success on the merits of their claim" to lifetime health insurance benefits. Golden, 845 F.Supp. at 415. The defendant contends, however, that the Supreme Court has implicitly overruled Yard-Man, and that the district court therefore erred in following it. Specifically, the defendant attacks the " Yard-Man inference" that retiree benefits are intended to survive the termination of a CBA. The defendant argues that, contrary to Yard-Man, the plaintiffs cannot prevail unless they prove the parties explicitly agreed to vest a right to the benefits.
 
 
 21
 In Yard-Man, a case in which retired employees sued their employer alleging it breached their CBA by terminating their life and health insurance benefits at the termination of the CBA, we recognized that parties to CBAs can provide for rights that survive the termination of the agreement. Yard-Man, Inc., 716 F.2d at 1479. We held that whether benefits survive the termination of a CBA depends on the intent of the parties. The opinion states that, in discerning the intent of the parties, basic rules of contract interpretation apply. "For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent." Id. Further, we instructed that the court "should interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties." Id. "The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion." Id. When ambiguities exist, we directed district courts to look to other provisions of the agreement for guidance. The aim in such cases is to settle on an interpretation which is harmonious with the entire agreement. Id. at 1480.
 
 
 22
 After setting out the rules of interpretation, we proceeded to apply them to the CBA at issue in Yard-Man. In examining the context in which the benefits at issue arose, we wrote: "it is unlikely that [life and health insurance benefits], which are typically understood as a form of delayed compensation or reward for past services, would be left to the contingencies of future negotiations." Id. at 1482. Moreover, we stated that "retiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." Id. (emphasis added). We tempered our remarks, however, with the following:
 
 
 23
 This is not to say that retiree benefits are necessarily interminable by their nature. Nor does any federal labor policy ... presumptively favor the finding of interminable rights to retiree insurance benefits when the collective bargaining agreement is silent. Rather, as part of the context from which the collective bargaining agreement arose, the nature of such benefits simply provides another inference of intent. Standing alone, this factor would be insufficient to find an intent to create interminable benefits. In the present case, however, this contextual factor buttresses the already sufficient evidence of such intent in the language of this agreement itself.
 
 
 24
 Id.
 
 
 25
 Yard-Man is a prior decision of a panel of this circuit. Thus, we are bound to follow it "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules [it]." Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985). The defendant, aware of this rule, argues that four recent Supreme Court decisions require us to modify Yard-Man: Curtiss-Wright Corp. v. Schoonejongen, --- U.S. ----, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); Litton Financial Printing Division v. NLRB, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); Massachusetts v. Morash, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989); and Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). After examining these cases, we disagree.
 
 
 26
 In Schoonejongen, the plaintiffs sued their employer, alleging that the employer's termination of their health insurance benefits constituted an improper amendment of their welfare benefits plan. Schoonejongen, --- U.S. at ----, 115 S.Ct. at 1227. In its opinion, the Court decided what kind of amendment procedure ERISA requires the plans to include. The vesting of rights through agreements such as CBAs was not at issue. See id. at ----, 115 S.Ct. at 1226 ("This case presents the question whether the standard provision in many employer-provided benefit plans stating that 'The Company reserves the right at any time to amend the plan' sets forth an amendment procedure that satisfies [ERISA] Sec. 402(b)(3)."). The Court simply noted that ERISA does not mandate minimum vesting requirements for welfare benefit plans, and that ERISA allows employers to adopt, modify, or terminate such plans at will. Id. at ----, 115 S.Ct. at 1228. The case bears no relation to the issues in Yard-Man.
 
 
 27
 In Litton, the Court determined whether an employer and the union representing its employees must submit their disputes to arbitration under an arbitration clause in an expired CBA. Litton Fin. Printing Div., 501 U.S. at 193, 111 S.Ct. at 2218. Addressing the question whether the duties and obligations imposed by a contract survive the contract, the Court wrote:
 
 
 28
 As with the obligation to make pension contributions ..., other contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement. Exceptions are determined by contract interpretation. Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement. And of course, if a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement, and so become subject to the contract's arbitration provisions.
 
 
 29
 Id. at 207-08, 111 S.Ct. at 2226 (all emphases added).
 
 
 30
 In its brief, the defendant focuses on the portion of the above quotation which we have underscored and argues that Litton requires the plaintiffs to prove an "express agreement" that benefits vest before they can prevail. In making this argument, the defendant ignores the portion of the above quotation which we have italicized in which the Court recognizes that courts, through rules of contract interpretation, can find that rights accrue or vest under the agreement even if they are not explicitly set out in the agreement. See Bidlack v. Wheelabrator Corp., 993 F.2d 603, 606-08 (7th Cir.) (en banc) (citing Litton in support of the rule that when CBAs are vague regarding the vesting of certain benefits, courts may resort to rules of interpretation, and to extrinsic evidence, in determining if the parties intended the rights to vest), cert. denied, --- U.S. ----, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). Far from contradicting Yard-Man, Litton actually supports its reasoning.
 
 
 31
 In Massachusetts v. Morash, the Court decided that an employer's payment of vacation benefits does not constitute a welfare benefit plan under ERISA. Morash, 490 U.S. at 120-21, 109 S.Ct. at 1675-76. In making this determination, the Court noted that ERISA's vesting requirements do not apply to welfare benefit plans. Id. at 119, 109 S.Ct. at 1675. This was the extent of the Court's discussion of vesting.
 
 
 32
 Advanced Lightweight Concrete Co. concerned the issue of whether a certain ERISA provision empowers trustees of multiemployer pension funds to collect from employers postcontract pension contributions which the LMRA may obligate the employers to make. 484 U.S. at 541, 108 S.Ct. at 832. The Court determined that Congress, in enacting the ERISA provision at issue, did not intend to enable the trustees to use the provision to collect the postcontract contributions required by the LMRA, but not ERISA. Id. at 548, 108 S.Ct. at 835. Rather, Congress only intended for the trustees to collect contributions which were promised prior to the termination of the CBA. Id. at 548-49, 108 S.Ct. at 835-36. While the case concerned the postcontract obligations of employers, the vesting of rights under CBAs was not at issue. Neither Advanced Lightweight Concrete Co. nor any of the other Supreme Court opinions cited by the defendant calls into doubt the validity of Yard-Man, or the Yard-Man inference.
 
 
 33
 Finally, the defendant asserts that this court abandoned Yard-Man in Cincinnati Typographical Union No. 3, Local 14519 v. Gannett Satellite Information Network, Inc., 17 F.3d 906 (6th Cir.1994). The defendant argues that Gannett is inconsistent with Yard-Man because, in Gannett, we relied on the Supreme Court's opinion in Litton. The defendant bases this argument on its theory that the Litton decision and Yard-Man are inconsistent. As discussed above, this theory is flawed. Moreover, in Gannett we cited Yard-Man for the proposition that "we might conclude the parties intended a right to vest if we are shown contract language or extrinsic evidence to support that conclusion." Gannett Satellite Info. Network, Inc., 17 F.3d at 910.
 
 
 34
 After considering the arguments the defendant makes, and the cases it cites, we conclude that Yard-Man is still good law, and controls this case. The district court did not err in following it. Regarding the Yard-Man inference, however, we should note that shortly after Yard-Man this court stated: "there is no legal presumption based on the status of retired employees." International Union, United Auto. Workers v. Cadillac Malleable Iron Co., 728 F.2d 807, 808 (6th Cir.1984). Yard-Man does not shift the burden of proof to the employer, nor does it require specific anti-vesting language before a court can find that the parties did not intend benefits to vest. Rather, the Yard-Man inference, and the other teachings of the opinion regarding contract interpretation and the consideration of extrinsic evidence, simply guide courts faced with the task of discerning the intent of the parties from vague or ambiguous CBAs.
 
 
 35
 The district court's interpretation of the CBAs at issue
 
 
 36
 In its reasoned opinion, the district court included a complete discussion of the evidence that led it to conclude that the plaintiffs are likely to succeed on the merits of their claim to lifetime health insurance benefits at no cost. See Golden, 845 F.Supp. at 413-15. We will only summarize the court's findings. The district court cites provisions in each of the CBAs at issue which tie retiree and surviving spouse eligibility for health insurance coverage to eligibility for vested pension benefits. Since retirees are eligible to receive pension benefits for life, the court found that the parties intended that the company provide lifetime health benefits as well.
 
 
 37
 The district court also notes language from summary plan descriptions[8] (SPDs), provided by the company to the employees at all three plants, which indicates that the company guarantees health benefits. A provision of one of the SPDs provides that those employees who retire without pension eligibility because they have not been with the company long enough to participate in the pension plan will, nonetheless, have lifetime health coverage at no cost. The defendants argue that because the SPDs specifically provide lifetime health insurance benefits for these retirees only, such benefits were not intended for any other retirees.
 
 
 38
 The plaintiffs argue the contrary. They assert that this specific language was necessary because these retirees do not have lifetime pension benefits to which to tie eligibility for health coverage, as do all the other retirees. The plaintiffs contend that the parties included this specific language to assure that those retirees who are ineligible for pension benefits still receive lifetime health care coverage. We find the plaintiffs' argument more persuasive; it would be anomalous for the defendant to guarantee lifetime health coverage to retirees with only a couple of years of service while neglecting to provide equal benefits to pensioners with dozens of years of service.
 
 
 39
 Additionally, the district court cites the conduct of the defendant as evidence of intent. In 1987, the defendant sold the three plants whose retirees now benefit from the preliminary injunction. The defendant agreed, however, to continue funding the retiree benefit plans for those employees who retired before the sales. At that time, the defendant provided an irrevocable letter of credit effective through the year 2002 in the amount of twenty million dollars, indicating that the defendant intended to provide health insurance benefits for many years. After considering the law and the facts of this case, we find no error in the district court's conclusion that the plaintiffs have shown a substantial likelihood of success on the merits.
 
 2. Irreparable harm
 
 40
 The defendant asserts that the plaintiff failed to prove that, without an injunction, they could suffer irreparable harm. First, we should note that proving irreparable harm is not an absolute prerequisite to obtaining a preliminary injunction. As we mentioned above, a court balances four factors in assessing whether it should issue a preliminary injunction. See Performance Unlimited, 52 F.3d at 1381. The degree of proof necessary for each factor depends on the strength of the plaintiffs' case on the other factors. In re DeLorean Motor Co., 755 F.2d at 1229. With that point clarified, we review the district court's findings of fact for clear error. Performance Unlimited, 52 F.3d at 1381. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Construction Laborers Pension Trust, 508 U.S. 602, ----, 113 S.Ct. 2264, 2279, 124 L.Ed.2d 539 (1993) (alteration in original) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).
 
 
 41
 In support of its finding that the plaintiffs would suffer irreparable harm, the district court cited affidavits from retirees detailing the financial hardship the modifications in their insurance coverage would cause. The court also cited decisions of other courts holding that retirees, primarily because of their fixed incomes, are unable to absorb even relatively small increases in their expenses without extreme hardship. The defendant argues that, since the plaintiffs failed to produce affidavits from retirees of each plant at issue, the court erred in applying the injunction to all three plants' retirees. The district court, however, found a likelihood that similar harm would befall retirees from all three plants. Golden, 845 F.Supp. at 415-16. On reviewing the affidavits, we are not "left with the definite and firm conviction" that the district court made a mistake, and thus its finding is not clearly erroneous.
 
 3. Balance of harms
 
 42
 The defendant also argues that the balance of harms favors it, not the plaintiffs, and so the district court should not have granted the preliminary injunction. The defendant, however, made no showing that continuing the benefits would cause it severe financial hardship. The district court noted that the defendant had been funding these benefits for the previous six years. Id. at 416. We find no error in the district court's determination that the balance of harms favors the plaintiffs.
 
 
 43
 Did the district court abuse its discretion in granting class-wide relief before certifying the class?
 
 
 44
 The defendant asserts that the district court erred in granting a "class-wide" preliminary injunction prior to certifying the class.[9] The defendant did not raise this issue below, and generally we will not hear issues raised for the first time on appeal. E.g., Noble v. Chrysler Motors Corp., Jeep Div., 32 F.3d 997, 1002 (6th Cir.1994). We will deviate from this rule only in exceptional circumstances, such as when following the rule would cause a miscarriage of justice, and particularly where the question is entirely legal and has been fully briefed by both parties. See United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991). We have also made exceptions when the proper answer is beyond doubt, no factual determination is necessary, and injustice might otherwise result. Taft Broadcasting Co. v. United States, 929 F.2d 240, 244 (6th Cir.1991).
 
 
 45
 This case does not merit the application of any of these exceptions. All we can glean from the parties' briefs is that the answer is most certainly not beyond doubt. Moreover, because the district court certified the class shortly after the parties filed their briefs in this appeal, any attempt to resolve the issue would be largely academic.
 
 CONCLUSION
 
 46
 Because the district court did not abuse its discretion in granting the plaintiffs a preliminary injunction, and because the defendant failed to raise the class certification issue below, we AFFIRM the district court's order granting the preliminary injunction.
 
 III. THE PETITION FOR A WRIT OF MANDAMUS
 
 47
 The plaintiffs, asserting their Seventh Amendment right to a jury trial in actions at law, petition this court for a writ of mandamus directing the district court to vacate its order striking their demand for a jury trial in this case. In their complaint, the plaintiffs present one claim relevant to their petition: an action under section 301 of the LMRA, 29 U.S.C. Sec. 185, for breach of CBAs. According to the complaint, the plaintiffs seek declaratory relief, injunctive relief, and damages.[10]
 
 
 48
 The plaintiffs contend that their claim for breach of the CBAs is an action at law, and that the damages they seek are legal relief. The sole issue presented by the petition is: Do the plaintiffs assert legal rights, entitling them to a jury trial under the Seventh Amendment, or are their claims only equitable? For the reasons set forth below, we DENY the plaintiffs' request for a writ of mandamus.
 
 ANALYSIS
 Standard for granting a writ of mandamus
 
 49
 The All Writs Statute, 28 U.S.C. Sec. 1651 (1980), vests in this court the power to issue a writ of mandamus. In re Bendectin Prods. Liab. Litig., 749 F.2d 300, 303 (6th Cir.1984); see also Beacon Theatres v. Westover, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959). Because mandamus is a "drastic remedy 'to be invoked only in extraordinary situations,' " In re Mechem, 880 F.2d 872, 874 (6th Cir.1989) (quoting Kerr v. United States Dist. Ct., 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976)), a party seeking such a writ usually must satisfy two conditions: (1) that there are no other adequate means for the party to obtain the desired relief, and (2) that the party has a "clear and indisputable" right to issuance of the writ. Id. (quoting Allied Chem. Corp. v. Daiflon Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam)).
 
 
 50
 Where the constitutional right to a jury trial is involved, however, some courts, relying principally on Beacon Theatres, have held that neither of these two preconditions needs to be met. E.g., In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1303 (7th Cir.) ("When the writ is used for [preservation of the right to trial by jury], strict compliance with the stringent conditions on the availability of the writ (including the requirement of proving irreparable harm) is excused."), cert. denied, --- U.S. ----, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); Wilmington Trust v. United States Dist. Ct., 934 F.2d 1026, 1029 (9th Cir.1991) ("The right to a jury trial, however, has occupied an exceptional place in the history of the law of federal mandamus permitting a writ to issue although the petitioner is unable to show a 'clear and indisputable' right."), cert. denied, 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992).
 
 The right to trial by jury
 
 51
 In Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), the Supreme Court said that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Id. at 486, 55 S.Ct. at 301. The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." As explained by Justice Story,
 
 
 52
 [b]y common law, [the framers of the Amendment] meant ... not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.
 
 
 53
 Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (quoting Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47, 7 L.Ed. 732 (1830) (alteration in original)).
 
 
 54
 Thus, to determine whether the Seventh Amendment entitles a particular litigant to a jury trial in a particular case, we must determine whether that case will resolve legal rights, or only equitable rights. In making this determination, we engage in two different inquiries. First, we compare the case at issue to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990) (quoting Tull v. United States, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). If the case at issue was unknown in eighteenth century England, we must look to an analogous claim that existed then to guide us in deciding whether the present case is legal or equitable. Id. at 565-66, 110 S.Ct. at 1344-45. "Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Id. at 565, 110 S.Ct. at 1345 (quoting Tull, 481 U.S. at 417-18, 107 S.Ct. at 1835). The second inquiry is more important. Id. (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)). In fact, Justice Brennan persuasively advocated, to simplify and to add some order to the inquiry, excising the search for an historic analogue from the analysis, and instead focusing solely on the remedy sought. Id. at 574-81, 110 S.Ct. at 1349-53 (Brennan, J., concurring).
 
 The plaintiffs' claims are equitable
 
 55
 The district court, accepting a magistrate judge's report and recommendation, granted the defendant's motion to strike the jury demand. In the report and recommendation, the magistrate judge concluded that the plaintiffs essentially seek specific performance, an equitable remedy.[11]
 
 
 56
 The first inquiry: Is the plaintiffs' LMRA action for breach of CBAs historically legal, or historically equitable?
 
 
 57
 The Supreme Court has stated that section 301 actions are "comparable to a breach of contract claim--a legal issue." Terry, 494 U.S. at 570 & n. 7, 110 S.Ct. at 1347 & n. 7. The right to a jury trial in section 301 actions is, therefore, generally preserved. Cf. International Union, United Auto. Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 705 n. 7, 86 S.Ct. 1107, 1113 n. 7, 16 L.Ed.2d 192 (1966) (stating, in determining what statute of limitations to apply to a section 301 suit, that the suit "closely resembles an action for breach of contract cognizable at common law").
 
 
 58
 Thus, as for the first inquiry, we conclude that the plaintiffs' LMRA claim is analogous to a breach of contract action. This determination is not dispositive, however; now we turn to the second inquiry.
 
 
 59
 The second inquiry: Is the relief the plaintiffs seek legal or equitable?
 
 
 60
 The plaintiffs seek the following relief on their LMRA claim:
 
 
 61
 A. A declaratory judgment that Kelsey-Hayes and Hayes Wheels are contractually obligated to provide class members and eligible dependents with the described health care benefits negotiated by Kelsey-Hayes and the UAW.
 
 
 62
 B. Preliminary and permanent injunctive relief requiring Kelsey-Hayes and Hayes Wheels to reinstate the health care benefits negotiated by Kelsey-Hayes and the UAW for class members and eligible dependents.
 
 
 63
 C. Judgment against Kelsey-Hayes and Hayes Wheels in an amount of damages equal to all costs and expenses sustained by class members and eligible dependents as a result of their refusal to provide the health care benefits negotiated by Kelsey-Hayes and the UAW, including but not limited to:
 
 
 64
 (1) All premiums and co-pays paid by class members for health care benefits which were formerly paid by Kelsey-Hayes.
 
 
 65
 (2) All direct payments and bills for health care which formerly were covered by the company paid health care plan.
 
 
 66
 (3) An amount equal to the Special Age 65 Benefit not paid to eligible class members.
 
 
 67
 The plaintiffs contend that the "damages" they seek (see paragraph C, above) are a legal remedy, not an equitable remedy, and that they therefore assert legal rights entitling them to a jury trial. "[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings," however. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477-78, 82 S.Ct. 894, 899-900, 8 L.Ed.2d 44 (1962). The district court determined that, semantics notwithstanding, the plaintiffs actually seek the equitable remedy of specific performance, and that the monetary relief is simply "incidental to, or intertwined with, the equitable remedies sought." In their petition for mandamus, the plaintiffs argue that the district court ran afoul of Supreme Court precedent when it categorized their alleged legal relief as incidental to their equitable relief.
 
 
 68
 We can resolve this issue by clearing up the plaintiffs' apparent confusion regarding the Supreme Court's use of the phrase "incidental to" in two distinct yet related contexts.
 
 
 69
 The Court has long indicated that a district court cannot properly deny a litigant a trial on legal issues by characterizing those issues as merely "incidental to," or insignificant in comparison to, equitable issues. Curtis, 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11; Dairy Queen, Inc., 369 U.S. at 473, 82 S.Ct. at 897; see Beacon Theatres, 359 U.S. at 510-11, 79 S.Ct. at 956-57. Once a court determines that a case involves legal issues, the litigants have a right to a jury trial on those issues, regardless of how insignificant they may appear in relation to equitable issues. See Thermo-Stitch Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir.1961), cited with approval in Dairy Queen, Inc., 369 U.S. at 473 n. 8, 82 S.Ct. at 897 n. 8. A district court violates this precedent when it determines that there are legal issues in the case and denies a jury trial nonetheless.
 
 
 70
 In this case, the district court was trying, as this court is trying, to determine whether the plaintiffs assert any legal rights. As discussed above, to make that determination we look to the nature of the action and to the relief sought, the latter, as we have seen, being more important. Terry, 494 U.S. at 565, 110 S.Ct. at 1344 (citing Nordberg, 492 U.S. at 42, 109 S.Ct. at 2790).
 
 
 71
 It is accepted throughout this country that a monetary award, generally, is a form of legal relief. See generally Restatement (Second) of Contracts Secs. 346-56 (1981) (hereinafter Restatement ). It is not true however, that "any award of monetary relief must necessarily be 'legal' relief." Terry, 494 U.S. at 570, 110 S.Ct. at 1347 (quoting Curtis, 415 U.S. at 196, 94 S.Ct. at 1009). It is well-settled that equitable relief includes monetary damages where required to afford complete relief. Restatement Sec. 358(3); see also Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 154 n. 10, 105 S.Ct. 3085, 3096 n. 10, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring) ("Trust-law remedies are equitable in nature, and include provision of monetary damages."); Mertens v. Hewitt Assocs., 508 U.S. 248, ----, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993) (recognizing that while money damages are the classic form of legal relief, courts may also grant money damages as required in indisputably equitable breach of trust cases); Tull v. United States, 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987) ("[W]hile a court in equity may award monetary restitution as an adjunct to injunctive relief, it may not enforce civil penalties."); Frank v. Coyle, 310 Mich. 14, 16 N.W.2d 649, 650 (1944) ("[T]he court of equity, having jurisdiction upon any well-settled ground of equity, will retain jurisdiction to grant complete relief.").
 
 
 72
 In their complaint, the plaintiffs seek "injunctive relief requiring Kelsey-Hayes and Hayes Wheels to reinstate the health care benefits" to which they claim they are entitled.[12] In Terry, the Court stated that "a monetary award 'incidental to or intertwined with injunctive relief' may be equitable." Terry, 494 U.S. at 571, 110 S.Ct. at 1348 (emphasis added) (quoting Tull, 481 U.S. at 424, 107 S.Ct. at 1839). According to section 358(3) of the Restatement, "[i]n addition to specific performance or an injunction" an equity court may award "damages and other relief" as may be necessary to afford complete relief. As an illustration, the drafters of the Restatement wrote: "Since an order seldom results in performance within the time the contract requires, damages for the delay will usually be appropriate." Restatement, supra, Sec. 358, comment c.
 
 
 73
 The district court granted the plaintiffs a preliminary injunction on March 17, 1994. The injunction forced Kelsey-Hayes to continue performing the alleged contract as it had prior to January 1, 1994. The monetary award the plaintiffs seek is to compensate them for the amount of loss they incurred between January 1 and March 17. Most of this loss is probably in the form of premiums and Special Age 65 Benefits withheld from pension checks by Kelsey-Hayes during this period. The balance would be the out-of-pocket expenses incurred in increased deductibles and co-payments. Such damages are exactly the type of monetary relief that courts, and the Restatement, envision as equitable relief; they are incidental to the grant of equitable relief, yet are necessary to afford complete relief. A court does not err in denying a jury trial where the monetary award sought is incidental to, or intertwined with, equitable relief. It does err when it denies a jury trial because of its determination that legal issues in the case are merely incidental to equitable ones.
 
 
 74
 As for the second inquiry (as distinguished from the inquiry regarding the law of the eighteenth century), since the monetary award sought by the plaintiffs is "incidental to and intertwined with" their request for specific performance, we are convinced that the relief they seek is equitable. Because according to Supreme Court precedent the second inquiry is more important than the first in determining whether the plaintiffs assert legal rights, we conclude that the plaintiffs do not assert legal rights in this case.
 
 
 75
 That the plaintiffs seek a declaration of rights under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, does not alter our conclusion. "Declaratory relief may be legal or equitable depending on the basic nature of the underlying issues." United States v. New Mexico, 642 F.2d 397, 400 (10th Cir.1981). In actions seeking declaratory relief, the right to a jury trial is preserved only where it otherwise exists. See Robinson v. Brown, 320 F.2d 503, 505 (6th Cir.1963) ("The inclusion of a claim for declaration of rights in the complaint did not, in our opinion, convert an equity case into an action at law."), cert. denied, 376 U.S. 908, 84 S.Ct. 662, 11 L.Ed.2d 607 (1964); see also Beacon Theatres, 359 U.S. at 504, 79 S.Ct. at 953 (stating that a defendant entitled to a jury trial in an antitrust suit "cannot be deprived of that right merely because [the plaintiff] took advantage of the availability of declaratory relief to sue ... first"). Seeking declaratory relief does not entitle one to a jury trial where the right to a jury trial does not otherwise exist.
 
 
 76
 As we understand Judge Boggs's dissent, he argues that our inquiry should end upon the determination that section 301 actions are analogous to actions for breach of contract. The essence of his argument is: (1) Breach of CBA claims are analogous to actions for breach of contract, (2) breach of contract actions were historically brought in courts of law, (3) the plaintiffs can be made whole through legal relief alone, hence their request for equitable relief is superfluous, and (4) we should therefore conclude that this case is simply a breach of contract action in which the plaintiffs seek legal relief.
 
 
 77
 Judge Boggs indicates that our discussion of equity courts' jurisdiction to award money damages is irrelevant because, he argues, these plaintiffs can be made whole by legal relief alone. Therefore, prior to the merger of law and equity, there would not have been jurisdiction for a court of equity to hear this case. Judge Boggs concedes, however, that "[i]f an LMRA Sec. 301 action for breach of a CBA was arguably analogous to a suit at equity, then a discussion of the amount of money damages that an equity court could award would be on point." Dissent at p. 664 p 7.
 
 
 78
 It is certainly true, as Judge Boggs contends citing Schoenthal v. Irving Trust Co., 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932), that federal courts cannot grant equitable relief without first determining that the plaintiff has no adequate remedy at law. Despite Judge Boggs's assertion to the contrary, however, this case, as it is presented to us today, could only have been maintained in a court of equity (prior to the merger of law and equity). Only a court of equity could have issued the preliminary injunction which the district court issued. Moreover, only a court of equity could issue the permanent injunction the plaintiffs seek.
 
 
 79
 It is also true, as Judge Boggs points out, that "[t]he form of the plaintiffs' complaint does not control the characterization of the action as either equitable or legal." Bugher v. Feightner, 722 F.2d 1356, 1359 (7th Cir.1983). We do not base our characterization of this case as equitable on the form of the complaint alone, however. Implicit in the issuance of a preliminary injunction, as was done here by the district court, indeed, in the granting of any form of equitable relief, is a conclusion that the plaintiff has no adequate remedy at law. See Schoenthal, 287 U.S. at 95, 53 S.Ct. at 51. Thus, since the defendant does not challenge in this appeal the district court's implicit conclusion that the plaintiffs have no adequate remedy at law, we assume that the district court's conclusion was correct. Cf. Griffin v. Michigan Dep't of Corrections, 5 F.3d 186, 190 (6th Cir.1993) (Boggs, J.; Norris, J., concurring) ("The law of the case doctrine applies to issues implicitly decided in earlier stages of the same case."). Judge Boggs's contention that the plaintiffs can be made whole through legal relief alone is therefore anomalous, and making that contention undermines the very validity of the preliminary injunction granted in this case.
 
 
 80
 It is clear then that this particular case claiming a breach of a CBA is an equitable one, because, unlike in many contract actions, the plaintiffs seek equitable relief to which the monetary relief is only incidental. See Redish, Seventh Amendment Right to a Jury Trial: A Study in the Irrationality of Rational Decision Making, 70 Nw. U.L.Rev. 486, 490 (1975) ("In the majority of cases at common law, the equitable or legal nature of a suit was determined not by the substantive nature of the cause of action but by the remedy sought."). In fact, had the district court granted the preliminary injunction sought by the plaintiffs prior to January 1, 1994 (as it could have, because the plaintiffs filed their motion for a preliminary injunction on December 23, 1993), this suit would not involve money damages at all. Rather, the plaintiffs would have sought only a declaration and a permanent injunction, and we would not be engaged in this debate.
 
 CONCLUSION
 
 81
 Because we conclude that the plaintiffs' claims are entirely equitable, we DENY their petition for a writ of mandamus. As discussed above, we AFFIRM the district court's order granting the preliminary injunction.
 
 
 82
 BOGGS, Circuit Judge, concurring in part and dissenting in part.
 
 
 83
 Because I believe the Seventh Amendment guarantees the right to jury trial in all LMRA Sec. 301 actions for breach of a collective bargaining agreement in which the plaintiffs seek money damages, I dissent from the part of the opinion denying the petition for a writ of mandamus. In Terry, the Supreme Court held that the plaintiffs in an indirect action for breach of a CBA under LMRA Sec. 301 (breach of the CBA plus breach of the union's duty of fair representation) have a Seventh Amendment right to jury trial. Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). Certainly plaintiffs in a direct action for breach of a CBA under Sec. 301 have an even stronger Seventh Amendment claim. The court's reason for denying a jury trial--that the plaintiffs seek legal and equitable remedies--has been rejected by the Supreme Court since Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). See generally Whitlock v. Hause, 694 F.2d 861, 864 (1st Cir.1982) ("The central concern in Dairy Queen was to prevent the merger of law and equity from eroding the seventh amendment guaranty.").
 
 
 84
 If the plaintiffs in this case were seeking only damages, they would have a right to jury trial on the issue of breach of the CBA. If the plaintiffs were seeking damages and a declaration that the CBA means what they say it does, they would still have a right to jury trial on the issue of breach of the CBA. Beacon Theatres Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 953, 3 L.Ed.2d 988 (1959) (jury trial right not lost when a request for declaratory judgment is added to an action for damages). The court's opinion concedes as much, holding that the right to a jury trial under Sec. 301 is "generally preserved." However, it then takes away the plaintiffs' Seventh Amendment right because they also request an injunction.
 
 
 85
 The Supreme Court has held repeatedly that a request for an equitable remedy does not waive the right to trial by jury on legal issues. Dairy Queen, supra, 369 U.S. at 473, 82 S.Ct. at 897 (if there is a legal issue, the court should grant a jury trial on that issue regardless of any other, equitable parts of the action).
 
 
 86
 [I]f a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as "incidental" to the equitable relief sought.' "
 
 
 87
 Tull v. United States, 481 U.S. 412, 425, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987) (quoting Curtis v. Loether, 415 U.S. 189, 196 n.11, 94 S.Ct. 1005, 1009 n.11, 39 L.Ed.2d 260 (1974)). Consider the Supreme Court's instructions in Curtis: "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies enforceable in an action for damages in the ordinary courts of law." Curtis, supra, 415 U.S. at 194, 94 S.Ct. at 1008. Clearly, LMRA Sec. 301 creates legal rights enforceable in an action for damages under ordinary common law principles. The plaintiffs here seek to enforce such a right and win damages. In my opinion, our constitutional inquiry ends there. Accord Gnossos Music v. Mitken, Inc., 653 F.2d 117 (4th Cir.1981) (holding that plaintiffs in a copyright action seeking an injunction and the statutory minimum damages of $250 have a right to jury trial on the issue of liability and damages because they seek damages for violation of a traditionally legal right).
 
 
 88
 Instead, the court holds that an otherwise legal issue ceases to be legal because the plaintiffs add a request for an injunction. (Behind this holding is an idea that the injunction is more important to these plaintiffs than legal relief, a misunderstanding discussed below.) But the court does not explain why this additional remedy is a relevant consideration. The inclusion of a request for an injunction has nothing to do with the issue of breach. The relevant facts do not change, nor does the legal remedy to which the plaintiffs are entitled if the trier of fact decides in their favor. See Wooddell v. International Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 97, 112 S.Ct. 494, 498, 116 L.Ed.2d 419 (1991) (applying Terry rule that Section 301 actions are legal in nature to situations where the plaintiff seeks both money damages and an injunction). The only difference is that, after liability is determined, the judge can award permanent injunctive relief. This possibility is no more relevant to the legal issue of breach than is, for example, a post-verdict request for costs.[1]
 
 
 89
 The court discusses, Opinion at pp. 660-61, the power of a court of equity to award monetary relief incidental to its equitable powers. I do not see the relevance of that discussion. If an LMRA Sec. 301 action for breach of a CBA was arguably analogous to a suit at equity, then a discussion of the amount of money damages that an equity court could award would be on point. Cf. Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291-92, 80 S.Ct. 332, 334-35, 4 L.Ed.2d 323 (1960) (Congress expressly gave courts "equitable" powers under the Fair Labor Standards Act, and these powers include the authority to award restitutionary back pay) (cited in Terry, supra, 494 U.S. at 572, 110 S.Ct. at 1348). In that situation, a party would have no jury trial right unless the authorized damages action exceeded an equity court's traditional jurisdiction. An LMRA Sec. 301 action, on the other hand, is analogous to an action for breach of contract, as the court concedes.[2] There is no source here for "equitable powers" to which an award of money can be incidental.
 
 
 90
 In fact, before the merger of law and equity, an equity court would have had no jurisdiction to hear the present action at all. Nothing in the record indicates that the legal relief the plaintiffs seek is inadequate to make them whole. Because of res judicata, any award of damages, even if for a single day, determines the meaning of the contested benefits provision forever. If more specificity is required, a declaration (which does not change the legal nature of an otherwise legal action) can be tailored to meet the plaintiffs' needs. All that an injunction adds is the threat of contempt as a sanction for non-compliance, and I see no indication that the ability to bring contempt proceedings is particularly important to these plaintiffs. If legal remedies were adequate, an equity court would not have jurisdiction to decide the issue of breach.[3] Schoenthal v. Irving Trust Co., 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932).
 
 
 91
 The Supreme Court used the adequacy of the remedy traditionally available at law to decide that monetary relief was legal rather than equitable in Granfinanciera. In that case, the defendant argued that monetary relief was equitable in nature because it was of the type that an equity court could have awarded incidental to an injunction. The Court responded that, although an equity court had powers to award money damages incidental to an equitable remedy, historical limits on an equity court's jurisdiction would have barred it from hearing a similar claim for damages because that claim could also have been brought adequately at law. Granfinanciera, supra, 492 U.S. at 47-48, 109 S.Ct. at 2793-94. Therefore, the Court determined that the issue in dispute was legal in nature. It cited with approval an earlier case that held that "the long-settled rule that suits in equity will not be sustained where a complete remedy exists at law ..., 'serves to guard the right of trial by jury preserved by the Seventh Amendment and to that end it should be liberally construed.' " Granfinanciera, supra, 492 U.S. at 48, 109 S.Ct. at 2793 (citing Schoenthal, supra, 287 U.S. at 94, 53 S.Ct. at 51). Obviously, Golden's situation is precisely on point. Without a showing that law could not have awarded him the relief he seeks (in the form of damages and a declaration), an equity court would have had no power to which legal relief could be considered "incidental."
 
 
 92
 Up until now, the legal nature of an issue depended on the generic type of issue. The court rejects this position, and makes the legal nature of an issue in the Sixth Circuit depend on the quirky circumstances that determine which of many possible remedies a plaintiff prefers. In this case, future compliance is worth much more to the plaintiffs than retrospective damages, because the preliminary injunction has been shielding them from harm. If the opposite were true--that is, if there had been no preliminary injunction, and benefits had been withheld during the pendency of this action--then damages would be considerable and the court would have to find a right to trial by jury. The idiosyncratic importance of the types of relief sought by the particular plaintiffs should have no place in Seventh Amendment analysis.
 
 
 93
 The court's new rule will force plaintiffs bringing an action for breach of a collective bargaining agreement to choose between a request for a jury trial and a request for equitable relief. For many plaintiffs, the equitable relief will not be important enough to risk the venerable and crucial right to trial by jury. Others will wait to seek an injunction by an amendment to the pleadings after the jury is empaneled (if possible), or by bringing a new action utilizing the collateral estoppel effect of the jury's liability determination (if not barred by res judicata themselves). The plaintiffs in this action are no exception: given the court's holding in this case, plaintiffs' counsel may simply amend the complaint to remove the request for injunctive relief. If, for some reason, an injunction becomes necessary down the road, the plaintiff could then attempt to raise the issue by amendment or in a new action.
 
 
 94
 Obviously, all this maneuvering should be unnecessary. If the right to a jury trial on a legal issue can survive the request for an injunction, plaintiffs will tell the court everything they want at the beginning of the litigation. Parties will not be forced, under threat of losing a constitutional right, to amend at the eleventh hour or file additional actions on the same set of facts. Nor will the law on amending complaints and the law of res judicata be asked to adapt to the new situation (e.g., is there an exception to res judicata, allowing a second proceeding on the same cause of action, because the plaintiff now seeks an injunction that it could have sought in the first action, but didn't because it wanted a jury trial?). Clearly, a simpler, transparent pleading regime better fits modern federal procedure. See generally Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d Sec. 1043, 138 ("the abolition of the forms of action furnish a single uniform procedure by which a litigant may present his claim in an orderly manner to a court empowered to give him whatever relief is appropriate and just").
 
 
 95
 The consequences of the court's rule become even more problematic when applied to situations when a defendant seeks to exercise the right to a jury trial. Consider this hypothetical: the defendant wants a jury trial in a breach of contract action, and would clearly be entitled to one if the plaintiff sought damages and/or a declaration. Aware of this, the cunning plaintiff adds a request for an injunction (which he doesn't really care about). Since the contract will last for a long time after the trial, an injunction would resolve the heart of the dispute. Under the court's rule, the defendant suddenly has no jury trial right, because the legal remedies have become "incidental." As long as the plaintiff pleads artfully, this rule destroys a defendant's constitutional right to trial by jury in all contract actions where the contract continues into the future.
 
 
 96
 Where there is a legal issue, there is a right to jury trial. A legal issue does not stop being a legal issue merely because an additional remedy is sought. Whatever the word "incidental" means, legal remedies are not be merely "incidental" to an injunction when the legal relief (1) relates to an issue, such as breach of a contract, that is clearly legal as a matter of history and tradition; and either (a) can resolve the bulk of the dispute between the parties without aid from the supposedly important injunction; or (b) could never have been awarded by an equity court, because that court would have been without jurisdiction to hear the case.
 
 
 97
 The Seventh Amendment right to jury trial should not be curtailed based on this court's convoluted logic. The error is grave, and the issue important. I must therefore respectfully dissent.
 
 
 
 [1]
 Actually, the corporation called Kelsey-Hayes Co. continued in existence, but changed its name to Hayes Wheels. Also, a new corporation was formed which adopted the name Kelsey-Hayes Co
 
 
 [2]
 A summary plan description is a publication explaining the benefits of a particular welfare benefit plan. ERISA requires employers to distribute SPDs to their employees. 29 U.S.C. Sec. 1022 (1988)
 
 
 [3]
 This was a monthly payment to pensioners 65 and older intended to reimburse the cost of their Medicare Part B premium
 
 
 [4]
 The district court certified the class on April 25, 1995. The class consists of approximately 2960 pensioners and spouses, about 1180 of whom are affected by the preliminary injunction
 
 
 [5]
 The parties refer to these three plants as the Hientz, Gunite, and SPECO facilities. These are the same three plants that Kelsey-Hayes sold in 1987
 
 
 [6]
 Section 301(a) reads as follows:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 29 U.S.C. Sec. 185(a).
 
 
 [7]
 There are two types of employee benefit plans under ERISA: pension plans and welfare benefit plans. 29 U.S.C. Sec. 1002(1), (2)(A) (1988). ERISA subjects pension plans to mandatory participation, vesting, and funding requirements. 29 U.S.C. Sec. 1051 (1988). Welfare benefit plans, however, are not subject to these requirements. Id. Retiree health insurance benefit plans, such as the ones at issue here, are classified as welfare benefit plans under ERISA. 29 U.S.C. Sec. 1002(1). Therefore, no right to lifetime health insurance benefits is created under ERISA, and we do not understand plaintiffs to contend otherwise
 
 
 [8]
 Courts generally accord significant weight to representations made in SPDs. E.g., Flacche v. Sun Life Assur. Co., 958 F.2d 730, 736 (6th Cir.1992)
 
 
 [9]
 The district court granted the plaintiffs' motion for a preliminary injunction on March 14, 1994. The injunction took effect on April 18, 1994. The parties filed their last brief in this appeal on January 30, 1995. The district court certified the class on April 25, 1995. Consequently, the parties' briefs do not address the fact that the class is now certified
 
 
 [10]
 The plaintiffs' original complaint did not include the word "damages;" rather, it read: "Judgment against Kelsey-Hayes in an amount equal to all costs and expenses sustained by class members...." The plaintiffs, apparently realizing that it would be of importance in getting a jury trial, amended their prayer for relief, over a year after the case was filed, to include the term "damages."
 
 
 [11]
 The district court also concluded, erroneously, that the plaintiffs' case is controlled by ERISA Sec. 502(a)(1)(B) under which we have held that there is no right to a jury trial. E.g., Bair v. General Motors Corp., 895 F.2d 1094, 1096 (6th Cir.1990). In their briefs to this court, the parties devote considerable space to arguing the question of whether ERISA preempts the LMRA and the common law of contracts, and, if so, whether a jury trial is allowed under ERISA. We do not address this argument any further because we have stated quite clearly in prior decisions that plaintiffs may, under some circumstances, bring claims for retirement benefits under either ERISA or the LMRA, or under both statutes simultaneously. E.g., Biros v. Spalding-Evenflo Co., 934 F.2d 740, 742 (6th Cir.1991). In any event, we determine that the plaintiffs' claim is properly brought under the LMRA
 
 
 [12]
 As the magistrate judge concluded, this is actually a request for specific performance of a contract
 
 
 [1]
 This is not a case where the court examines the remedy authorized by statute to determine the nature of a cause of action. Cf. Terry, supra (remedies authorized by the statute aid determination of the proper historical analog for fair representation suit against union and employer); Tull, supra, 1837-38 (statutory remedy dependent on "calculations traditionally performed by judges" is circumstantial evidence that Clean Water Act suit is analogous to a suit at equity); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (since statute authorizes damages similar to traditional tort damages, the action is legal). LMRA Sec. 301 itself does not explicitly provide an injunctive remedy for breach of a CBA. See, e.g., International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Mack Trucks, Inc., 820 F.2d 91, 98 (3d Cir.1987) (federal common law principles allow a court to issue some types of injunctions in suits under Sec. 301, if such an injunction is not prohibited by the Norris-LaGuardia Act)
 
 
 [2]
 Since the entire purpose of the two-part test, including the inquiry into remedies, is to determine what actions are analogous to suits at common law, Tull, supra, 481 U.S. at 417, 107 S.Ct. at 1835, it makes no sense to use the test to deny a jury trial right when it is undisputed that there is a direct analogy to a traditionally legal action. Regardless of whether the first or second part of the Tull test is more important, no court has ever used an inquiry into remedies to make a patently legal issue equitable
 
 
 [3]
 Given that the pleaded legal remedies are adequate to resolve permanently the long-term questions in dispute, my colleagues state, Opinion at p. 662, that an equity court nevertheless would have had jurisdiction over the entire action because the plaintiffs have obtained a preliminary injunction. I cannot agree. A preliminary injunction is equitable, but it is also preliminary: it occurs before trial and before evidence, and has no binding effect on the eventual resolution of the case. Brown v. International Bhd. of Elec. Workers, 936 F.2d 251, 255 (6th Cir.1991). How can pre-trial motions determine the nature of an underlying claim? I must stress again that the Supreme Court's Seventh Amendment jurisprudence means that a court can exercise jurisdiction that would traditionally have been both legal and equitable without abrogation of the Seventh Amendment right to jury trial on legal issues. The district court's jurisdiction to issue a preliminary injunction is certainly equitable--but the nature of that jurisdiction is irrelevant to the question whether the plaintiff has a Seventh Amendment right to trial by jury on another issue